# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: November 19, 2014

Mr. Rex A. Burgess
Burgess & Sharp
43260 Garfield Road
Suite 280
Clinton Township, MI 48038

Mr. Thomas J. Davis
Kienbaum, Opperwall, Hardy & Pelton
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009

Ms. Elizabeth Phelps Hardy
Kienbaum, Opperwall, Hardy & Pelton
280 N. Old Woodward Avenue
Suite 400
Birmingham, MI 48009

Re: Case No. 14-1294, *Mallory Beard v. AAA MI*
Originating Case No. : 2:12-cv-10726

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

Sincerely yours,

s/Jeanine R. Hance
Case Manager
Direct Dial No. 513-564-7037

cc: Mr. David J. Weaver

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0868n.06

No. 14-1294

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Nov 19, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MALLORY BEARD, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR THE |
| AAA OF MICHIGAN d/b/a THE AUTO ) | EASTERN DISTRICT OF MICHIGAN |
| CLUB GROUP ) | |
| ) | |
| Defendant-Appellee. ) | |
| ) | |

**BEFORE: McKEAGUE and KETHLEDGE, Circuit Judges; BERTELSMAN, District Judge.\***

**McKeague, Circuit Judge.** Mallory Beard sold life insurance for the Auto Club Insurance Association ("Auto Club").[1] As it turns out, Beard was excellent at selling life insurance but not at managing sales agents. Once promoted to Life Sales Manager, Beard began ruffling feathers with his "dictatorial" and "belittling" leadership style. Complaints from sales agents streamed in, and Beard was eventually terminated, but not before accusing Auto Club of racial discrimination. At trial, Beard failed to prove his allegation that discrimination—rather than his negative feedback—was the "but for" cause of his termination. Accordingly, we affirm the directed verdict in favor of Auto Club on Beard's Title VII and state-law retaliation claims.

---

\* The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

[1] In its brief, the appellee notes that the caption to this appeal is incorrect and the official name of the appellee is "Auto Club Insurance Association" or "Auto Club." This opinion refers to the appellee as "Auto Club."

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

## I.

Beard, an African-American male, began working for Auto Club in 2006 as a life insurance sales agent. Beard quickly established himself and received several promotions, eventually landing the position of Life Sales Manager in April 2008. In that role, Beard managed a group of 20 to 30 sales agents, trained new sales agents, and motivated the agents to increase sales.

Beard's troubles began shortly after his promotion when several of Beard's agents began complaining about his management style. One agent described Beard's attempts to improve her sales performance as "dictatorial" and "belittling." Three agents accused Beard of treating them like children and chiding them for not being team players. Meanwhile, other agents complained about Beard's training seminars. Specifically, they complained that bathroom breaks had to be authorized and that Beard often made inappropriate comments during the seminars, including telling agents to "use your bonus to take your wife and/or mistress out to dinner."

Beard's then-supervisor, Craig Huffman, memorialized these complaints in an April 2009 memorandum. The memorandum urged Beard to improve his leadership style while speaking highly of Beard's sales performance: "Combine a changed leadership approach with your already demonstrated good production, and your unit will be meeting expectations." (*Id.*) Huffman met with Beard on April 29 to discuss the memorandum, and the two agreed on ways Beard could address the criticisms. Beard also suggested that the agents were following their own agendas instead of admitting their own failures. (R. 90-3, Page ID # 4396.)

In July 2009, Huffman gave Beard his midyear review. Like the earlier memorandum, the midyear review praised Beard's sales performance while urging Beard to improve his leadership. Huffman reminded Beard, "You still have not galvanized all individuals in your

-2-

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

team into a mutually supporting element" and suggested that Beard get the senior agents "on 'your side' and keep them close" by showing them respect. (R. 90-1, Page ID # 4025.)

Tony Welsh replaced Huffman as Beard's supervisor in late 2009, and the complaints did not stop. Welsh documented the new complaints in Beard's July 2010 midyear review. The review included complaints about Beard's "unprofessional and accusatory" tone with two agents, his "intimidating and retaliatory" treatment of another agent, and his miscommunications regarding quarterly bonuses and scheduling meetings. The review stated in no uncertain terms:

> Mallory your communication to others is an ongoing issue that has caused discord and distraction from the business of selling life insurance and must be resolved. It has a direct impact on your future consideration for career advancement and undermines your leadership role. (R. 90-1, Page ID # 4036.)

Welsh met with Beard in July 2010 to discuss the review. Michael John, Welsh's replacement, also attended the meeting. At the meeting, Beard accused Auto Club of discrimination, telling Welsh and John that the complaints against him were racially motivated. According to Beard, sometime after this meeting, John confronted Beard in a hallway, yelling at him and getting "right up in [Beard's] face." (R. 69, Page ID # 2986.) Beard reported the conduct to Pam Porter in Human Resources.

The July 2010 review did not appear to change Beard's leadership style or lower the number of complaints against Beard. As Beard's supervisor, John began receiving complaints similar to those Welsh and Huffman had received. Two altercations, both in January 2011, directly preceded Beard's termination.

That month, Floyd Wells, a new sales agent, complained that Beard approached him and accused him in front of his coworkers of being disrespectful. During the confrontation, Wells explained that he did not want to work under Beard because he had heard negative reviews of

-3-

Case 2:12-cv-10726-NGE-MKM ECF No. 98, PageID.4659 Filed 11/19/14 Page 5 of 14 (5 of 14)
Case: 14-1294 Document: 27-2 Filed: 11/19/2014 Page: 4

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

Beard's management. According to Wells, Beard then made disparaging comments of other Auto Club managers.

That same month, Mickey Maniachi, an Ann Arbor branch manager, complained of Beard's interactions with her. Beard had brought a new sales agent to Maniachi's branch to see if the agent would be a good fit. According to Maniachi, Beard announced he would be "interviewing" Maniachi, which Maniachi considered to be disrespectful. Beard also asked Maniachi about branch closings and suggested that another agent would soon be discharged. Maniachi considered these subjects inappropriate to discuss in front of agents.

John and Welsh investigated the complaints from Maniachi and Wells and, on January 24, 2010, met with Beard to discuss "a consistent pattern involving Mallory over the past two years with different individuals, in different roles, at different times and locations all with consistent theme; his management approach and inappropriate comments." (R. 90-1, Page ID # 1117.) Beard either denied the criticisms or suggested his comments had been misinterpreted. Welsh responded that the criticisms had been consistent and there were substantial discrepancies between the complaints and Beard's version of events. At the end of the meeting, Beard was suspended. Two days later, Beard was terminated.

Beard appealed the termination and the matter was referred to Porter in Human Resources. Porter found that "[c]ontrary to his claim that he always dealt with employees in a professional manner, records in Beard's personnel file verify he has been counseled repeatedly by management regarding inappropriate interaction with employees and managers." (R. 90-1, Page ID # 4130.) Auto Club denied Beard's appeal.

On February 17, 2012, Beard sued Auto Club alleging (i) racial discrimination under Title VII, (ii) retaliation under Title VII, (iii) racial discrimination under Michigan's civil rights

Case 2:12-cv-10726-NGE-MKM ECF No. 98, PageID.4660 Filed 11/19/14 Page 6 of 14
Case: 14-1294 Document: 27-2 Filed: 11/19/2014 Page: 5 (6 of 14)

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

statute, the Elliot-Larsen Civil Rights Act ("ELCRA"), and (iv) retaliation under ELCRA. The case proceeded to trial on all four claims. At the conclusion of Beard's case, Auto Club moved for a directed verdict on all claims. The district court granted the motion as to Beard's retaliation claims but denied it as to Beard's discrimination claims. The jury deliberated on the discrimination claims and found in favor of Auto Club.

This appeal followed.

## II.

Beard raises a host of issues on appeal. He contends the district court erred by (1) granting Auto Club's motion for a directed verdict on Beard's Title VII retaliation claim, (2) granting Auto Club's motion for a directed verdict on Beard's ELCRA retaliation claim, (3) instructing the jury on intentional discrimination, (4) refusing to give Beard's proposed instructions on "discriminatory intent" and "discriminatory animus," (5) admitting two of Beard's prior employment records, and (6) awarding Auto Club costs for daily transcripts. We affirm the district court on all six issues.

### A. Directed Verdict on Beard's Title VII Retaliation Claim

We begin with the directed verdict on Beard's Title VII retaliation claim. In reviewing a directed verdict, this Court applies the same standard of review as the district court. We review the proceedings to "determine whether there was sufficient evidence presented to raise a material issue of fact for the jury." *O'Neill v. Kiledjian*, 511 F.2d 511, 513 (6th Cir. 1975). In doing so, we view the evidence in the light most favorable to the nonmovant. *See Galloway v. United States*, 319 U.S. 372, 395 (1943).

At trial, Beard claimed Auto Club terminated him because he accused Auto Club of racial discrimination at a July 2010 meeting with John and Welsh and in later communications with Human Resources. The burden fell on Beard to establish a prima facie case of retaliation. A

-5-

Case 2:12-cv-10726-NGE-MKM ECF No. 98, PageID.4661 Filed 11/19/14 Page 7 of 14
Case: 14-1294 Document: 27-2 Filed: 11/19/2014 Page: 6 (7 of 14)

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

prima facie case of retaliation is established when the plaintiff shows that "(1) he … engaged in protected activity, (2) the employer knew of the exercise of the protected right, (3) an adverse employment action was subsequently taken against the employee, and (4) there was a causal connection between the protected activity and the adverse employment action." *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 720 (6th Cir. 2008). Specifically, "but for" causation between the protected activity and the adverse employment action is needed. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "But for" causation exists where "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id*.

The parties do not dispute that Beard presented sufficient evidence of the first three elements. We affirm the district court because Beard failed to present sufficient evidence of the fourth element—that but for his allegations of discrimination, he would not have been terminated. Beard was well on the path to termination by July 2010 when he first accused Auto Club of discrimination. Almost immediately after his promotion, Beard began racking up complaints about his dictatorial management regime. These complaints—memorialized in an April 2009 memorandum and July 2009 and July 2010 reviews—simply could not be dismissed as the grumblings of one unusually disgruntled employee.

Instead, Beard's termination appears only to be the natural progression of Auto Club's preexisting concerns and of the unresolved friction between Beard and his agents. An employee cannot allege discrimination like a protective amulet when faced with the possibility that his preexisting disciplinary problems could lead to his termination. Likewise, an employer is not bound to cease all investigation of an employee merely because the employee alleges discrimination. *See Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 723 (8th Cir. 2008). Even

Case 2:12-cv-10726-NGE-MKM ECF No. 98, PageID.4662 Filed 11/19/14 Page 8 of 14
    Case: 14-1294     Document: 27-2     Filed: 11/19/2014     Page: 7    (8 of 14)

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

without alleging discrimination, Beard still would have engaged in the same conduct that directly preceded his termination; he still would have accused Wells of disrespect and still would have conducted the same inappropriate "interview" of Maniachi. In short, Beard still would have been terminated.

Of course, Beard disagrees with this conclusion. He argues that, "[i]f it were not for [his] complaints of discrimination, [Auto Club] would not have pursued his termination because the same scrutiny would not have been placed on his behavior." Appellant Br. at 33. In essence, Beard argues that his allegations led to heightened scrutiny of his conduct which, in turn, led to his termination. This Court has recognized that heightened scrutiny of an employee after he or she engages in protected activity may support an inference of causation. *See Hamilton v. Gen. Elec. Co.*, 556 F.3d 428, 436 (6th Cir. 2009).

However, that theory of causation is not available to Beard because Auto Club investigated the complaints against Beard with the same level of scrutiny before and after his protected activity. Beard argues that but for his protected activity, Auto Club would not have "investigated and secretly documented" every complaint against him, but this argument is meritless. Auto Club had been investigating every complaint against Beard *before* he ever alleged discrimination—Huffman investigated the complaints he later memorialized in his April 2009 memorandum, and Welsh investigated the complaints he later memorialized in the July 2010 midyear review. Additionally, there was nothing secretive about Auto Club's documentation of these complaints. Auto Club made Beard well aware of the complaints through various meetings and written memoranda.

-7-

Case: 14-1294 Document: 27-2 Filed: 11/19/2014 Page: 8    (9 of 14)
Case 2:12-cv-10726-NGE-MKM ECF No. 98, PageID.4663 Filed 11/19/14 Page 9 of 14

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

For these reasons, we find the district court properly found Beard's evidence of causation insufficient, and we find the district court did not err in granting Auto Club a directed verdict on Beard's Title VII retaliation claim.

### B.  Directed Verdict on Beard's ELCRA Retaliation Claim

Next, Beard challenges the directed verdict on his ELCRA retaliation claim.  He argues the district court erred because it used Title VII's "but for" causation standard to assess his state-law ELCRA claim even though Michigan courts have yet to expressly adopt the federal causation standard.

An appellate court reviews a district court's application of state law de novo.  *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991).  ELCRA is Michigan's state-law civil rights statute.  Generally, Michigan courts recognize the persuasive force of federal Title VII precedent in interpreting ELCRA.  *Elezovic v. Ford Motor Co.*, 697 N.W.2d 851, 859 (Mich. 2005) (internal citation omitted).  Nevertheless, Michigan courts have refused to defer to federal Title VII interpretations when doing so "would nullify a portion of the [Michigan] Legislature's enactment."  *Id*.

Here, Beard presents no argument why reading "but for" causation into ELCRA would nullify the statute's purposes or policies.  This Court also cannot find any such argument. Instead, a side-by-side reading of Title VII's and ELCRA's retaliation provisions suggests similarity, not difference, in the statutes' causation requirements.  Both Title VII and ELCRA use the same type of "because" language to describe the necessary relationship between protected activity and a retaliatory act.  Section 2000e-3(a) of Title VII prohibits employer retaliation "*because* [an employee] has opposed . . . an unlawful employment practice . . . or . . . made a [Title VII] charge."  *See* 42 U.S.C. § 2000e-3(a) (emphasis added).  Meanwhile,

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

ELCRA states that "[t]wo or more persons shall not conspire to, or a person shall not … retaliate or discriminate against a person *because* the person has opposed a violation of this act, or *because* the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." *See* Mich. Comp. Laws § 37.2701(a) (emphasis added).

In *University of Texas Southwestern Medical Center v. Nassar*, 133 S. Ct. 2517 (2013), the Supreme Court read "but for" causation into Title VII guided largely by the ordinary meaning of the word "because." *See id.* at 2528. It stands to reason that Michigan courts would make the same interpretation of the identical "because" language found in ELCRA. Accordingly, we find the district court did not err in using "but for" causation to review Beard's ELCRA retaliation claim, and we uphold the directed verdict in favor of Auto Club.

### C. Jury Instruction on Intentional Discrimination

Beard next argues the district court erred when it instructed the jury that discrimination must be intentional under Title VII to be actionable. Beard argues no discriminatory intent is needed to prove a Title VII violation. The jury instruction at issue reads: "[I]t is unlawful for an employer to *intentionally* discriminate against any person . . . because of a person's race." (R. 74, Page ID # 3786) (emphasis added). Challenges to jury instructions are reviewed for abuse of discretion. *United States v. Russell*, 595 F.3d 633, 642 (6th Cir. 2010). Because intent is the cornerstone of a Title VII disparate-treatment claim and because Beard was pursuing a disparate-treatment theory of liability at trial, the district court did not err when it instructed the jury on intentional discrimination.

In his brief, Beard argues intent is not required because the relevant provision in Title VII, § 2000e-2, does not expressly include the word "intent." Nevertheless, the Supreme Court

-9-

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

has read § 2000e-2 to require a showing of intent: "A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job related action." *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009) (internal quotation omitted). The requirement of intent for a disparate-treatment claim is well established. *See Watson v. Forth Worth Bank & Trust*, 487 U.S. 977, 986 (1988); *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 346 (6th Cir. 2012) (citation and quotation omitted).

It appears Beard has confused the requirements for a disparate treatment claim under Title VII with the requirements for a disparate impact claim under Title VII. His brief seeks a new trial on "Plaintiff's Title VII and ELCRA disparate *impact* claims" yet he argues that "[n]othing in [Title VII] states that conduct that constitutes disparate *treatment* has to be intentional to be actionable." Appellant Br. at 40, 42. While a disparate-impact claim does not require a showing of intent, *see Griggs v. Duke Power Co.*, 401 U.S. 424, 430–31 (1971), a claim of disparate treatment does, and it is the latter that the challenged jury instruction concerns. Though Title VII permits an employee to pursue disparate treatment or disparate impact theories of liability, the two theories have vastly different evidentiary requirements. *See Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981).

At trial, Beard did not pursue a disparate impact claim. He did not identify an Auto Club policy or practice "fair in form, but discriminatory in operation." *Griggs*, 401 U.S. at 431. The jury instruction concerned the elements of a disparate treatment claim and thus, the district court did not err by instructing the jury that discrimination had to be intentional to be actionable.

    D. **Failure to Give Beard's Proposed Jury Instruction**

Beard also alleges error in the district court's refusal to give two of his proposed jury instructions: one defining "discriminatory intent" and one defining "discriminatory animus." We

-10-

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

review the denial of a proposed jury instruction for abuse of discretion. *See United States v. Hart*, 635 F.3d 850, 854 (6th Cir. 2011). Here, we find the refusal to give Beard's proposed instructions not to be an abuse of discretion. The proposed instructions each referred to aspects of the *McDonnell Douglas* burden-shifting framework—instructing the jury to examine an employer's legitimate, nondiscriminatory reasons for pretext and informing the jury that more favorable treatment of similarly situated individuals creates an inference of discriminatory animus. As this Court has discussed, "it is normally inappropriate to instruct the jury on the *McDonnell Douglas* analysis," *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 593 (6th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)), and here the district court's instructions on the law were "a clear and preferable statement of the law," *In re Lewis*, 845 F.2d 624 (6th Cir. 1988).

### E. Admission of Beard's Prior Employment Records

Next, Beard challenges the admission of two of his prior employment records. At trial, Beard was impeached with records from his former employer, Prudential. One was a "Climate Assessment Summary" replete with negative comments about Beard's leadership. The other was a letter to Beard explaining that his removal as a manager was due to the negative feedback in his Climate Assessment Summary. Beard argues the district court erred in admitting these records because the records were not disclosed in discovery and the records were inadmissible Rule 404(b) evidence.

We disagree and find the employment records were properly admitted for impeachment purposes. As such, the records did not need to be disclosed in discovery. On cross-examination, Beard was asked about deposition testimony he gave that no concerns were raised about his leadership while he was at Prudential. The records were admitted during that line of questioning

-11-

Case 2:12-cv-10726-NGE-MKM ECF No. 98 PageID.4667 Filed 11/19/14 Page 13 of 14
Case: 14-1294 Document: 27-2 Filed: 11/19/2014 Page: 13 (13 of 14)

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

to prove that Beard was being untruthful, as the records showed not only that Beard received negative feedback about his leadership but that he was removed from management as a result. (*See* R. 70, Page ID # 3106.) Though the Federal Rules of Civil Procedure require pretrial disclosure of certain documents and exhibits, this requirement is limited to evidence being admitted for purposes "other than solely for impeachment." Fed. R. Civ. P. 26(a)(3).

Beard tries to work around this limitation, suggesting the records *were* offered for nonimpeachment purposes—specifically, the improper purpose of proving conduct in conformity therewith. However, during cross-examination, the court made sure to inform the jury that the records touched only on Beard's credibility. (R. 70, Page ID # 3108–09.) Likewise, at closing argument, Auto Club explained the records were not to be considered for the truth of the matter asserted. (R. 74, Page ID # 3836). Under these circumstances, Beard's employment records were properly admitted as impeachment evidence and were not inadmissible Rule 404(b) evidence. The district court did not err in admitting the records.

### F. Award of Daily Transcript Costs

Lastly, Beard challenges the district court's denial of his Rule 54(d)(1) motion to review costs. We do not address this challenge because Beard did not file a proper notice of appeal from the motion's denial.

Final judgment was entered in favor of Auto Club on February 14, 2014. That judgment did not include taxed costs, since Auto Club did not submit a bill of costs until March 11. On March 12, Beard filed a notice of appeal from the judgment and the district court taxed costs in favor of Auto Club. On March 15, Beard filed his Rule 54(d)(1) motion to review costs. The motion was denied on April 22, and the district court amended its judgment on May 13 to reflect

No. 14-1294
*Mallory Beard v. AAA of Michigan d/b/a Auto Club Group*

the taxed costs. Beard never filed a separate notice of appeal to challenge the post-judgment award of costs.

Beard asserts that his notice of appeal did not become effective until May 13, and thus his notice of appeal was from the judgment as it stood on May 13, post-taxing of costs, not as it stood on February 14. Beard argues that the effectiveness of his notice of appeal was delayed by the filing of his Rule 54(d)(1) motion to review costs.

Beard is mistaken. Fed. R. App. P. 4(a)(4)(B)(i) reads in full:

> If a party files a notice of appeal after the court announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

*Id.*

The qualifying motions listed in Fed. R. App. P. 4(a)(4)(A) include a Rule 54 motion for attorney's fees "if the district court extends the time to appeal under Rule 58." Fed. R. App. P. 4(a)(4)(A). But here, Beard did not make a Rule 54 motion for attorney's fees. He made a Rule 54(d)(1) motion to review costs. A separate notice of appeal was required for this Court to review the award of costs, and no such notice was filed. *See Martin v. Williams*, 960 F.2d 149 (6th Cir. 1992). Thus, Beard's challenge to the award of costs is not properly before this Court.

## III.

For the reasons stated above, the district court is **AFFIRMED** in all respects.